IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


Karen O. Hazelton,

        Plaintiff,


vs.                              Case No. 11-2293-JTM


Michael J. Astrue, Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

Plaintiff Karen Hazelton has applied for Social Security benefits. Her application was denied by the Administrative Law Judge (ALJ) on February 9, 2010, a decision affirmed by the Appeals Council on March 25, 2011. There are three allegations of error by Hazelton. She contends that the ALJ erred in assessing her Residual Functional Capacity (RFC), posing an inadequate hypothetical question to the vocational expert, and in finding her statement describing her symptoms as not fully credible.

Plaintiff-claimant Hazelton was born on April 22, 1962. She has stated that she became disabled, through a combination of the effects of myasthenia gravis (MG), hyperthyroidism, depression and fatigue, weakness, knee pain, double vision, and migraine headaches, beginning September 1, 2003. She has a high school education and

continued her part-time work as a physician assistant until February, 2005. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 25-35), and the briefs of Hazelton ((Dkt. 10, at 3-13) and that of the Commissioner (Dkt. 13, 2-3).

The ALJ concluded that Hazelton suffered from a number of severe impairments, including obesity, degenerative disease of the knee, migraines, asthma, blurred or double vision, mild to moderate spondylosis, and mild spinal canal stenosis (Tr. 25). Hazelton's hyperthyroidism, high cholesterol, sleep apnea, acid reflux and restless leg syndrome problems were under control with medication, and there was no objective medical evidence to show that these problems were severe. The ALJ also found that the medical evidence and her functional capacity indicated that Hazelton's mental impairments were not severe. Finally, the ALJ reviewed the results of various medical tests and concluded that Hazelton had MG and Wolf-Parkinson-White syndrome, but that these were well controlled. None of the Hazelton's severe impairments met the listed impairments set forth in by the Secretary. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526)).

Ultimately, the ALJ found that Hazelton had a RFC which would permit her to do sedentary work, except that, for each eight hour day, she should be limited to two hours of standing and walking, and six hours of sitting. She was not limited in her ability to push or pull, but could not climb ladders or scaffolds, or face unprotected heights or exposure to fumes or dangerous machinery. She should balance, crouch, kneel, crawl, stoop only on occasion. She will occasionally lose concentration and have problems with persistence and

pace due to fatigue. This RFC prevented her from returning to her past work as a physician assistant, but would not prohibit her from performing other sedentary work, such as credit card processor, telephone solicitor, or information clerk (Tr. 34).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize

the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Hazelton argues that the ALJ erred in his conclusions regarding her impairments, but the court finds no error in the ALJ's assessment of those impairments or her RFC. While Hazelton complains that the ALJ should have found that her MG was a severe impairment, substantial evidence supports the ALJ determination, after a careful examination of the evidence, that this condition was not severe. The ALJ noted that Hazelton had experience fatigue, weakness and double vision, he also found that the objective medical evidence did not support a finding that the MG created or constituted a medically determinable impairment within the meaning of 20 C.F.R. § 404.1508.

In her Reply, Hazelton argues that the assessment offered by the government is simply a *post hoc* attempt to provide a rationale for the ALJ's decision. But this is not the case. The ALJ's opinion specifically referenced the entire record and all of Hazelton's symptoms. (Tr. 28, 29). This is not an instance of an ALJ failing to offer a clear or definitive ruling, a deficiency which the government has attempted to cover by offering a credible, but merely possible, rationale for that ruling. Rather, in a careful and considered opinion, the ALJ made deliberate and extended citations to the medical records, coupled with

general conclusions, such as his finding that "there are no objective laboratory tests that were positive for [MG} and the claimant was only treated for symptoms." And the medical records support this conclusion, demonstrating that Hazelton was first diagnosed with possible MG based an abnormal single fiber electromyogram (EMG) of her right eye muscle, although other EMGs of her arms and legs conducted at the same time were normal. And there was an absence of specific antibodies associated with MG (Tr. 911, 1009-10). This is not *post hoc* rationalization, but simply the determination that the ALJ's conclusions are supported by substantial evidence.

In addition, substantial evidence exists which supports the ALJ's observation that Hazelton was treated for her MG symptoms, including plasmapheresis treatment and removal of her thymus gland, and that she was doing well by March of 2004. Two years later, a neurological examination of the plaintiff yielded normal results. Additional testing in 2007 after further treatment showed normal results, to the extent that Hazelton's neurologist expressed doubt about the initial MG diagnosis. (Tr. 27, 30, 457, 755, 881-82). On January 15, 2008, Dr. April McVey concluded that Hazelton "does not have any objective evidence for myasthenia gravis." (Tr. 753). In 2008, Hazelton received decreased treatments for MG, but her condition remained stable. Speaking to her physician on June 6, 2008, Hazelton indicated that she "feels her MG is doing well" (Tr. 959). Reviewing all of the evidence in the record, the court finds that the ALJ's conclusions as to Hazelton's impairments are supported by substantial evidence.

Similarly, the court finds that the ALJ did not err in determining that Hazelton's statements as to her non-exertional limitations were not fully credible. The ALJ properly set forth the controlling standards for assessing such claims (Tr. 29), and then reviewed the evidence in light of those standards. *See* 20 C.F.R. § 404.1529; *Hamilton v. Sec'y of HHS*, 961 F. 2d 1495, 1498 (10th Cir. 1992); *Luna v. Bowen*, 834 F.2d 161, 163-65 (10th Cir. 1987). Here, the ALJ found that the objective medical evidence did not substantiate Plaintiff's allegations of disabling symptoms (Tr. 31).

While the ALJ did not apply all of the potential factors, he was not required to do so. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (an ALJ must "set[] forth the specific evidence he relies on in evaluating the claimant's credibility," but need not recite "a formalistic factor-by-factor recitation of the evidence"). Here, the ALJ first noted Hazelton's own description of her impairments and limitations, including the MG which was otherwise determined to be not severe in nature. (Tr. 29-30).

The ALJ then conducted an extensive review of the medical evidence (Tr. 29-32), finding that the record indicated generally normal results, or some instances of mild impairments. Many of these impairments, such as her spondylosis and double-vision, were substantially corrected with treatment. The ALJ repeatedly noted an absence of medical evidence supporting the severity of Hazelton's claimed restrictions. He further noted that Hazelton's statements regarding the alleged side effects of her medications were inconsistent, sometimes indicating that they were serious and substantial, and later indicated that there were no such side effects. The ALJ also noted the discrepancy between

the severity of her claimed impairments (including the alleged side effects from medication), and her failure to seek or maintain treatment for these conditions. Finally, the ALJ extensively reviewed Hazelton's daily living activities, finding that these were inconsistent with the level of disability asserted by her. (Tr. 32). The court has reviewed the record and finds that the ALJ's credibility conclusions are well supported by substantial evidence in the record.

Hazelton contends that the ALJ erred in discounting the questionnaire submitted by Dr. Roya Zarraby indicating that she could perform some sedentary work, but has difficulty with stress, memory, and concentration. The ALJ discounted Dr. Zarraby's assessment as "inconsistent with the claimant's description of her activities of daily living, minimal treatment history and signs and findings in the physical exams and diagnostic tests previously cited." (Tr. 33). Further, he noted that Dr. Zarraby's conclusions as to Hazelton's memory problems were not consistent with "the mental status exams of record." (*Id*.) The ALJ referenced both specific mental health evaluations by exhibit number, and, it must be remembered, rendered his conclusions as to the weight of Dr. Zarraby's evaluation after conducting an extensive discussion of the objective medical evidence, treatment history, and daily life activities in the preceding pages of his opinion. Further, alongside his assessment of the Zarraby questionnaire, the ALJ reviewed the conclusions of the State agency opinions showing greater functional capacity "because they are consistent with the material evidence in the file." (Tr. 33). The court has reviewed the ALJ's conclusions supporting his assessment of Hazelton's RFC, and finds that they are supported by substantial evidence.

Finally, the court finds that the ALJ made no error in concluding, based on the testimony of the vocational expert, that Hazelton was able to perform some sedentary jobs. In the present appeal, Hazelton contends that the ALJ erred in his formulation of hypothetical questions for the vocational expert. In particular, she argues that the RFC incorporated into the hypothetical questioning should have included her MG and associated impairments such as blurred or double vision.

The ALJ, however, had previously noted Hazelton's vision problems and MG had been successfully treated, and these conclusions as to the impact on her RFC were supported by substantial evidence. The court finds that the hypothetical question posed to the vocational expert was properly grounded on the impairments of the claimant reflected in her RFC, and concludes that the ALJ's determination that Hazelton could perform a significant number of sedentary jobs in the national economy is supported by substantial evidence.

IT IS ACCORDINGLY ORDERED this 26th day of September, 2012 that the present appeal is hereby denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE